# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

DARREN MICHAEL SHIELDS and
CONNIE BOURQUE, Individually and on
behalf of others similarly situated,

          Plaintiffs,

     v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO.,

          Defendant.

Civil Action No. 6:19-CV-1359-JDC-PJH

Judge James D. Cain, Jr.

Magistrate Judge Patrick J. Hanna

## DEFENDANT'S MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

Wayne J. Lee
Heather S. Lonian
STONE PIGMAN WALTHER
WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, LA 70112-4042
Phone:  504.593.0814
Email:  wlee@stonepigman.com
       hlonian@stonegpigman.com

Peter W. Herzog III (*pro hac vice*)
WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, MO 63102
Phone:  314.326.4129
Email:   pherzog@wtotrial.com

*Attorneys for Defendant State Farm
Mutual Automobile Insurance Co.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 1

I.      THE INSURANCE CONTRACTS AT ISSUE. ............................................................ 1

II.     MS. BOURQUE'S TOTAL LOSS. .............................................................................. 2

III.    MR. SHIELDS' TOTAL LOSS. ................................................................................... 4

IV.     PLAINTIFFS' COMPLAINT. ....................................................................................... 6

ARGUMENT ............................................................................................................................. 7

I.      LEGAL STANDARD. ................................................................................................... 7

II.     PLAINTIFFS' ALLEGATIONS DEMONSTRATE THAT
        STATE FARM COMPLIED WITH LA. R.S. 22:1892(B)(5). ..................................... 9

        A.      Section 1892(B)(5) Does Not Require an Insurer to Use NADA
                or the KBB to Determine "Actual Case Value" ............................................... 9

        B.      The Autosource Reports Are Fair Market Value Surveys as
                Contemplated by § 1892(B)(5) ...................................................................... 12

        C.      Plaintiffs' Conclusory Allegation That Autosource Is Not "a
                Generally Recognized Used Motor Vehicle Industry Source" Is
                Insufficient and Demonstrably False in Any Event .................................... 14

III.    PLAINTIFFS' BREACH OF CONTRACT CLAIM ALSO FAILS AS A
        MATTER OF LAW ..................................................................................................... 15

        A.      Plaintiffs Fail Even to Identify the Specific Policy Provision that
                State Farm Allegedly Breached, Requiring Dismissal. ............................... 15

        B.      Even if This Court Deems Plaintiffs' Allegations Sufficient,
                State Farm Did Not Breach the Policy as a Matter of Law. ........................ 16

                1.      State Farm complied with the Policy. ............................................... 16

                2.      Plaintiffs' allegations that State Farm breached the Policy
                        by failing to use NADA or the KBB are insufficient and
                        implausible. ...................................................................................... 18

i

IV.     PLAINTIFFS DO NOT STATE A STAND-ALONE CLAIM FOR A
        VIOLATION OF LA. R.S. 22:1973.............................................................. 19

        A.      Plaintiffs Do Not State Claims for a Violation of § 1973 Without a
                Predicate Breach of Contract Claim............................................................. 19

        B.      Plaintiffs Fail to State a Claim Under § 1973 Because State Farm
                Made Timely Payments to Plaintiffs.............................................................20

CONCLUSION .........................................................................................................21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arceneaux v. State Farm Fire & Cas. Co.,*
 2009 WL 959948 (E.D. La. Apr. 7, 2009)........................................................................20

*Ashcroft v. Iqbal,*
 129 S. Ct. 1937 (2009).........................................................................................................8

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007)............................................................................................................8

*Blakely v. State Farm Mut. Auto. Ins. Co.,*
 406 F.3d 747 (5th Cir. 2005) ......................................................................................17, 18

*Bombet v. Donovan,*
 2015 WL 65255 (M.D. La. Jan. 5, 2015).........................................................................10

*Bradley v. Allstate Ins. Co.,*
 620 F.3d 509 (5th Cir. 2010) ............................................................................................17

*Dickerson v. Lexington Ins. Co.,*
 556 F.3d 290 (5th Cir. 2009).............................................................................................21

*Edwards v. Allstate Prop. & Cas. Co.,*
 2005 WL 221558 (E.D. La. Jan. 27, 2005) ......................................................................19

*Favors v. Office of Risk Mgmt.,*
 2015 WL 858534 (E.D. La. Feb. 27, 2015) ......................................................................16

*Forsyth v. NHC Place/Anniston, LLC, Inc.,*
 2018 WL 4909953 (N.D. Ala. Oct. 10, 2018) .............................................................. 8, 15

*FTC v. CCC Holdings Inc.,*
 605 F. Supp. 2d 26 (D.D.C. 2009)........................................................................... Passim

*Funk v. Stryker Corp.,*
 631 F.3d 777 (5th Cir. 2011) ............................................................................................10

*Gauthreaux v. USAA Cas. Ins. Co.,*
 2001 WL 65573 (E.D. La. Jan. 25, 2001) .................................................................9, 11, 19

*Hibbets v. Lexington Ins. Co.,*
 377 F. App'x 352 (5th Cir. 2010)............................................................................. Passim

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ................................................................. 2, 3, 16

*Jordan v. Tr.*, No. 16-cv-02122-KAW,
  2017 WL 396169 (N.D. Cal. Jan. 30, 2017) ............................................... 8, 15

*Liberty Mut. Ins. Co. v. Consol. Elec. & Tech. Assocs. Corp.*,
  2007 WL 118938 (E.D. Mich. Jan. 10, 2007) ............................................... 10

*Louque v. Allstate Ins. Co.*,
  314 F.3d 776 (5th Cir. 2002) ...................................................................... 15

*Phillips v. Patterson Ins. Co.*,
  813 So. 2d 1191 (La. Ct. App. 2002) ........................................................... 19

*Rhino Shield Gulf S., LLC v. RSUI Grp., Inc.*,
  2019 WL 461692, n.2 (E.D. La. Feb. 5, 2019) .............................................. 16

*Riser v. Shelter Mut. Ins. Co.*,
  997 So. 2d 675 (La. Ct. App. 2008) (reversing ............................................ 21

*Seacor Holdings, Inc. v. Commonwealth Ins. Co.*,
  635 F.3d 675 (5th Cir. 2011) ................................................................. 17, 21

*Slade v. Progressive Sec. Ins. Co.*,
  2013 WL 12182957 (W.D. La. Feb. 4, 2013) ........................................... Passim

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
  509 F.3d 673 (5th Cir. 2007) ................................................................ 18, 19

*Taylor v. Books A Million, Inc.*,
  296 F.3d 376 (5th Cir. 2002) ........................................................................ 8

*Thompson v. Goetzmann*,
  337 F.3d 489 (5th Cir. 2003) .................................................................... 8, 15

*United States v. Whitlow*,
  979 F.2d 1008 (5th Cir. 1992) ..................................................................... 10

## Statutes, Rules & Other

Fed. R. Civ. P. 12(b)(6) .................................................................................. 7

Fed. R. Evid. 201(b)(2) ................................................................................. 10

La. Civ. Code Ann. art. 2047 ....................................................................... 17

iv

La. R.S. 22:1892 ........................................................................................................... 9, 13

La. R.S. 22:1973 .......................................................................................................... 19, 20

## INTRODUCTION

This case presents a straightforward question of statutory construction. Distilled to its essence, Plaintiffs' Complaint alleges that State Farm Mutual Automobile Insurance Company ("State Farm") violated Louisiana law by using an electronic valuation system for used cars known as Autosource, rather than NADA or Kelley Blue Book ("KBB"), when computing the actual cash value of their totaled vehicles. As more fully explained below, Plaintiffs' Complaint flunks the plausibility test and fails to meet the requirements of Fed. R. Civ. P. 8. The relevant Louisiana statutes and regulations do not require insurers to use NADA or KBB. Indeed, Plaintiffs' proposed universal reliance on NADA and the KBB would appear to violate Louisiana law. As explained in *FTC v. CCC Holdings Inc.*, 605 F. Supp. 2d 26 (D.D.C. 2009), NADA and KBB "provide only regional data that are rarely localized" and fail to account for the vehicle's options, mileage, and condition as precisely as total loss valuation programs like Autosource do. *Id.* at 42. Because the Autosource valuations comply with La. R.S. 22:1892(B)(5), and because Plaintiffs do not plead facts that state a viable claim for breach of contract or for penalties under La. R.S. 22:1892 or R.S. 22:1973 as a matter of law, the Complaint should be dismissed in its entirety with prejudice.

## BACKGROUND

### I.     THE INSURANCE CONTRACTS AT ISSUE.

Plaintiffs entered into insurance contracts with State Farm. (ECF No. 1, ¶ 4.) Mr. Shields bought collision coverage with a property damage limit of $25,000 and a $500

deductible, while Ms. Bourque purchased collision coverage with a property damage limit of $25,000 and a $1,000 deductible.[1]

Each Policy obligated State Farm to provide collision coverage under which, if a "covered vehicle" sustains direct, sudden, or accidental damage, State Farm has "the right to choose to settle with [the insured] or the owner of the covered vehicle in one of the following ways": either "[p]ay the cost to repair the covered vehicle minus any applicable deductible," or "[p]ay the actual cash value of the covered vehicle minus any applicable deductible." (Ex. 1, at 26-27.)

If State Farm elects to pay the "actual cash value" of the covered vehicle, then "[t]he owner of the covered vehicle and [State Farm] must agree upon the actual cash value of the covered vehicle." (*Id.*) And "[i]f there is disagreement," then it "will be resolved by appraisal if both the owner and [State Farm] consent." (*Id.*) In addition, "[t]he damaged covered vehicle must be given to [State Farm] in exchange for [State Farm's] payment," unless State Farm agrees otherwise. (*Id.*)

## II.    MS. BOURQUE'S TOTAL LOSS.

On March 7, 2018, Ms. Bourque's vehicle, a 2016 Toyota RAV4 XLE with 37,671 miles, was involved in a total-loss accident. (ECF No. 1, ¶ 9.) She made a claim under her Policy with State Farm. (*Id.* ¶ 10.) State Farm chose to pay Ms. Bourque "the actual cash value of the covered vehicle minus any applicable deductible." (Ex. 1, at 27; *see also* ECF No. 1, ¶ 22.)

---

[1] The insurance policy that State Farm issued to Plaintiffs, including the declaration pages, policy booklet, and applicable endorsements, is attached as Exhibit 1. Because Plaintiffs refer to their insurance policy with State Farm in the Complaint (*see, e.g.*, ECF No. 1, ¶¶ 4-6, 11, 30-35), and because the insurance policy is central to Plaintiffs' claims, the Court may consider the insurance policy in assessing this motion to dismiss. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

State Farm determined the "actual cash value" of Ms. Bourque's vehicle by using Autosource Market-Driven Valuation ("Autosource"). A copy of the Autosource report was excerpted and included in the Complaint. (ECF No. 1, ¶ 22; *see also* Connie Bourque Autosource Rep. at 1 ("This valuation report was prepared specifically for [Plaintiff Bourque's] vehicle and represents a fair and accurate value driven by the retail used vehicle market."), attached as Exhibit 2.[2]) Autosource determined that the "market value" of Ms. Bourque's vehicle was $19,928, based on "vehicles for sale at dealerships and private party sellers, starting right in the local market."[3] (Ex. 2, at 1.)

The market value was determined using four comparable vehicles—all 2016 Toyota RAV4 XLEs, like Ms. Bourque's, and all offered for sale by local car dealerships. (*Id.* at 4-5.) Specifically, the four comparable vehicles included two vehicles offered for sale by All Star Toyota of Baton Rouge, in Zachary, Louisiana (80 miles from Youngsville); one offered for sale by Team Toyota Scion in Baton Rouge, Louisiana (54 miles from Youngsville); and another offered for sale by Toyota of New Orleans, in New Orleans, Louisiana (115 miles from Youngsville). (*Id.*) After adjusting to account for differences in "odometer, equipment and condition," the prices of those four vehicles— $20,225, $19,390, $19,626, and $20,212—were used to calculate an average price.

---

[2] Because this document is referenced and included in Plaintiffs' Complaint, and because it is central to Plaintiffs' claims, this Court may consider the document without converting State Farm's motion to dismiss into a motion for summary judgment. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Slade v. Progressive Sec. Ins. Co.*, No. 6:11-2164, 2013 WL 12182957, at *4 (W.D. La. Feb. 4, 2013).

[3] The local market for Ms. Bourque's vehicle valuation was Youngsville, Louisiana (zip code 70592-5402), and comparable vehicles were chosen to "balance geographic location with comparability of one vehicle to others." (Ex. 2, at 3.)

That average price—$19,863—was then adjusted *upward* to $19, 928 to account for the condition of Ms. Bourque's vehicle. (Ex. 2, at 2; *see also* ECF No. 1, ¶ 24.) To this figure, Autosource added 10.5% sales tax of $2,092.44, and subtracted Ms. Bourque's deductible of $1,000, for a total payment of $21,020.44. (Ex. 2, at 2; *see also* ECF No. 1, ¶ 24.) Ms. Bourque's report also included an NADA value of $20,050. (Ex. 2, at 6.) NADA calculated this value by "assum[ing] a vehicle in clean condition" and applying a "base value" of $20,150, a downward mileage adjustment of $175, and an upward option adjustment of $75. (*Id.*)

State Farm then promptly paid Ms. Bourque the "actual cash value" of $21,020.44. (*See* ECF No. 1, ¶¶ 46, 49.) Ms. Bourque did not challenge or even question the amount she was paid before filing her Complaint in this Court.

### III. MR. SHIELDS' TOTAL LOSS.

On April 27, 2019, Mr. Shields' vehicle, a 2008 Isuzu i-370 truck with 137,902 miles, was involved in a total-loss accident. (ECF No. 1, ¶ 7.) He made a claim under his State Farm Policy. (*Id.* ¶ 8.) Consistent with that Policy, State Farm paid Mr. Shields "the actual cash value of the covered vehicle minus any applicable deductible." (Ex. 1, at 27; *see also* ECF No. 1, ¶ 18.)

State Farm determined the "actual cash value" of Mr. Shields' vehicle by using an Autosource report that Mr. Shields excerpted and included in the Complaint. (ECF No. 1, ¶ 18; *see also* Darren Shields Autosource Rep. at 1, attached as Exhibit 3.[4]) Autosource determined that the "market value" of Mr. Shields' vehicle was $6,997, based on

---

[4] This Court may consider the document without converting State Farm's motion to dismiss into a motion for summary judgment. *See supra* n.2.

"vehicles for sale at dealerships and private party sellers, starting right in the local

market."[5] (Ex. 3, at 1.)

The market value was based on one other comparable vehicle—also a 2008 Isuzu

i-370 truck—offered for sale by a local car dealership, Motor City in Lafayette,

Louisiana. (*Id.*) The price of that comparable vehicle—$7,272—was then adjusted

upward and downward to account for differences in "odometer, equipment and

condition" with the Shields vehicle, including the following:

- a downward adjustment of $70 because Mr. Shields' vehicle had higher mileage, (*id.* at 1-2);

- an upward adjustment of $25 because the Shields vehicle had some "optional equipment" (a trailer hitch), (*id.*);

- a downward adjustment of $50 because the comparable vehicle had an AM/FM CD player, but the Shields vehicle did not, (*id.*);

- a downward adjustment of $145 because the seats in Mr. Shields' vehicle were in comparatively worse condition, including "1 tear or wear hole greater than 1 credit card," (*id.*);

- a downward adjustment of $35 because the carpet in the Shields vehicle was in comparatively worse condition, including "1 tear greater than 1 credit card in size," (*id.*);

- an upward adjustment of $55 because the interior trim in Mr. Shields' vehicle was in comparatively better condition, (*id.*);

- a downward adjustment of $55 because the glass in Mr. Shields' vehicle was in comparably worse condition, including "1-3 chips or bull's eyes less than 1 quarter in size," (*id.*);

- a downward adjustment of $40 because the headliner in the Shields vehicle was in comparatively worse condition, displaying "[s]light stains," (*id.*); and

---

[5] The local market for Plaintiff Shields' vehicle valuation was Lafayette, Louisiana
(zip code 70501-5127), and the comparable vehicle was chosen to "balance geographic
location with comparability of one vehicle to others." (Ex. 3, at 4.)

- an upward adjustment of $40 because the exterior trim on the Shields vehicle was in comparatively better condition. (*Id.*)

After calculating these various adjustments, Mr. Shields' vehicle was assigned a value of $6,997. (Ex. 3, at 2; *see also* ECF No. 1, ¶ 19.) To this figure, Autosource added 8.45% sales tax of $591.25, and subtracted a deductible of $500, for a total value of $7,088.25. (Ex. 3, at 2; *see also* ECF No. 1, ¶ 20.) Like Ms. Bourque, Mr. Shields' Autosource report also included a NADA value of $8,775. (Ex. 3, at 5.) NADA calculated this value by "assum[ing] a vehicle in clean condition" and applying a "base value" of $8,600 (from a national, not local, source) and an upward option adjustment of $175. (*Id.*)

State Farm then promptly paid Mr. Shields the "actual cash value" of $7,088.25. (*See* ECF No. 1, ¶¶ 46, 49.) Like Ms. Bourque, Mr. Shields did not challenge or even question the amount he was paid before filing a Complaint in this Court.

## IV.   PLAINTIFFS' COMPLAINT.

Despite never objecting to or even questioning the "actual cash value" they received for their vehicles, and rather than consenting to an appraisal in accordance with the Policy, Plaintiffs instead chose to file this class action lawsuit in federal court, alleging claims for breach of contract and for violation of La. R.S. 22:1973. (ECF No. 1, ¶¶ 27-48.)

Plaintiffs' theory of injury is that State Farm's valuation methodology for determining "actual cash value"—Autosource—violates La. R.S. 22:1892(B)(5) and the Policy. (ECF No. 1, ¶ 37.) Specifically, they allege that Autosource is not "a fair market value survey" and not "a generally recognized used motor vehicle industry source" under La. R.S. 22:1892(B)(5) (ECF No. 1, ¶¶ 16, 41-43), and that publicly available guides "such

6

as NADA book values or Kelly (sic) Blue Book values are the generally accepted valuation tools." (*Id.* ¶ 29; *see also id.* ¶¶ 21, 25.)

According to Plaintiffs, State Farm breached the Policy and violated La. R.S. 22:1973(B)(5) by not paying "the full amount due under the terms of the insurance contract" (ECF No. 1, ¶ 46), with their damages amounting to "[t]he difference between [State Farm's] actual cash value determination and the actual cash value as determined by a means which complies with" Louisiana law (*id.* ¶ 49)—presumably, what they characterize as the "generally accepted valuation" offered by NADA or KBB.

Applying that here, the difference between Mr. Shields' Autosource value ($6,997) and the NADA value ($8,775) is $1,778. And the difference between Ms. Bourque's Autosource value ($19,928) and the NADA value ($20,050) is just $122. Plaintiffs also purport to bring claims on behalf of a putative Louisiana class. (ECF No. 1, ¶¶ 50-59.)

## ARGUMENT

Plaintiffs assert three claims: (1) a "violation" of § 1892(B)(5), based on allegations that State Farm's use of Autosource does not comply with Louisiana law; (2) breach of contract, based on allegations that State Farm failed to pay the full "actual cash value" under the Policy; and (3) a violation of La. R.S. 22:1973, based on allegations that State Farm failed to timely pay the full "actual cash value" of Plaintiffs' totaled vehicles within 60 days. Because Plaintiffs' claims all fail as a matter of law, the Court should dismiss their Complaint in its entirety.

## I.   LEGAL STANDARD.

To survive dismissal, Plaintiffs must plead sufficient facts to state a facially plausible claim for relief. *See* Fed. R. Civ. P. 12(b)(6); *Hibbets v. Lexington Ins. Co.*, 377

F. App'x 352, 354 (5th Cir. 2010) (affirming dismissal of insureds' putative class action complaint for failure to state a claim). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hibbets*, 377 F. App'x at 354 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements" is not enough, nor do "naked assertion[s]" devoid of "further factual enhancement" suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-58 (2007); *see also Hibbets*, 377 F. App'x at 354 ("[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice" (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002))).

And where, as here, the viability of a plaintiff's claim turns on a pure question of statutory interpretation, a court can decide that issue as a matter of law on a motion to dismiss. *See Thompson v. Goetzmann*, 337 F.3d 489, 501 (5th Cir. 2003) (affirming the district court's dismissal order under Rule 12(b)(6) because "the plain terms of the ... statute" show the defendant "can have no ... liability"); *Forsyth v. NHC Place/Anniston, LLC, Inc.*, No. 1:18-CV-00663-KOB, 2018 WL 4909953, at *1 (N.D. Ala. Oct. 10, 2018) ("The question of law before the court is one of pure statutory interpretation and therefore is appropriate for review under a motion to dismiss"); *Jordan v. Tr.*, No. 16-cv-02122-KAW, 2017 WL 396169, at *5 (N.D. Cal. Jan. 30, 2017) ("[I]n general, statutory interpretation may properly be conducted at the motion to dismiss stage because it is a legal question").

## II.   PLAINTIFFS' ALLEGATIONS DEMONSTRATE THAT STATE FARM COMPLIED WITH LA. R.S. 22:1892(B)(5).

Plaintiffs allege a "violation" of La. Stat. Ann. § 22:1892(B)(5). (*See* ECF No. 1, ¶¶ 39-43.) But § 1892 does not provide a stand-alone cause of action for penalties premised on a violation of subsection (B)(5). *See id.* Rather, that subsection simply mandates methods for determining value "[w]hen an insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value." La. Stat. Ann. § 22:1892(B)(5). And even then, § 1892(B)(5) allows insurers to use several permissible methods—compliance with any one of them suffices.

Regardless whether Plaintiffs' claim for a "violation" of § 1892(B)(5) is a cognizable claim, however, State Farm did not "violate" either subsection allegedly at issue because (1) § 1892(B)(5) does not mandate a particular valuation methodology, such as NADA or the KBB; (2) Autosource *is* "a fair market value survey conducted using qualified retail automobile dealers in the local market"; and (3) Plaintiffs' counterfactual allegation that Autosource is not "a generally recognized used motor vehicle industry source" lacks any pleaded factual support, rendering it insufficient as a matter of law.

### A.   Section 1892(B)(5) Does Not Require an Insurer to Use NADA or the KBB to Determine "Actual Cash Value."

Although oblique, the Complaint appears to allege that State Farm violated § 1892(B)(5) by failing to use "other valuation systems such as NADA book values or Kelly (sic) Blue Book values," which Plaintiffs contend "are the generally accepted valuation tools." (ECF No. 1, ¶ 29; *see also id.* ¶¶ 21, 25.) However, § 1892(B)(5) does not require insurers to use NADA, the KBB, or any other specific valuation methodology to determine actual cash value. *See Gauthreaux v. USAA Cas. Ins. Co.*, No. Civ. A. 00-

2045, 2001 WL 65573, at *4 (E.D. La. Jan. 25, 2001) (dismissing a claim that the insurer was required to use NADA to determine a vehicle's actual cash value).

As another court has already found, furthermore, total-loss valuation methodologies such as Autosource are actually *superior* to NADA and the KBB because they "use a consistent methodology across all vehicles that includes recent sales of comparable vehicles," whereas NADA and the KBB "simply are not as accurate, detailed, or up-to-date." *FTC v. CCC Holdings Inc.*, 605 F. Supp. 2d 26, 42 (D.D.C. 2009); *see also* NADAguides.com ("All values are only a guide and prices will always be above or below the guide values for vehicles."), https://www.nadaguides.com/FAQ/kelley-blue-book.[6]

This is so because total-loss valuation systems such as Autosource account for, "among other factors, year, make, model, body style, engine, mileage, upgrades, condition, and include[] numerous databases." *CCC Holdings Inc.*, 605 F. Supp. 2d at 42; (*see also* Exs. 2 & 3). NADA and the KBB, on the other hand, "include subjective data and do not account for all of the vehicle's options, mileage, or condition as precisely as [total-loss valuation] programs" do. *CCC Holdings Inc.*, 605 F. Supp. 2d at 42; *see also* NADAguides.com (stating that "[i]ndividual vehicles may have an actual value that is higher or lower than the estimated values created by NADAguides," and "[t]he process

---

[6] The Court may take judicial notice of the contents of the NADA website. *See* Fed. R. Evid. 201(b)(2); *United States v. Whitlow*, 979 F.2d 1008, 1012 (5th Cir. 1992) (affirming the district court's findings based on a judicially noticed NADA guide); *Bombet v. Donovan*, No. 13-118-SDD-SCR, 2015 WL 65255, at *8 (M.D. La. Jan. 5, 2015) (confirming the court's ability to take judicial notice of corporate websites); *see also Liberty Mut. Ins. Co. v. Consol. Elec. & Tech. Assocs. Corp.*, No. 06-CV-10217-DT, 2007 WL 118938, at *3 (E.D. Mich. Jan. 10, 2007) (taking judicial notice of information from Liberty Mutual's website). It is well established that a court may take judicial notice of matters when ruling on a motion to dismiss. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

by which users of NADAguides determine valuation is inherently subjective"),

https://www.nadaguides.com/FAQ/values-and-pricing#q82.

Given that Plaintiffs affirmatively allege that using NADA or the KBB satisfies

§ 1892(B)(5), the Complaint flunks the plausibility standard with allegations that State

Farm violated the statute by using a methodology that is *more* objective, *more* accurate,

*more* detailed, and *more* current than NADA or KBB. *See CCC Holdings Inc.*, 605 F.

Supp. 2d at 42. Louisiana Insurance Directive No. 18 also compels this conclusion. That

directive arguably *prohibits* insurers from relying solely on NADA or the KBB for

determining "actual cash value," instead directing them to determine the actual value of

"the *particular car* involved in the loss":

> It has come to my attention that certain insurance
> companies writing vehicle insurance are adjusting
> automobile total losses solely on the basis of values
> published by trade organizations. Further, certain adjusters
> have represented to claimants and insureds that the so-
> called 'Blue Books' are the final arbiter of values of used cars.
>
> ... While published values of used cars may be a helpful tool
> in determining a settlement value, the automobile insurance
> company is obligated to determine the actual value of the
> *particular car* involved in the loss. Average values do not
> apply to particular cases.

La. Ins. Directive No. 18 (Jan. 10, 1974), attached as Exhibit 4[7]; *see also CCC Holdings*

*Inc.*, 605 F. Supp. 2d at 42 ("[Total-Loss Valuation] systems' calculations are said to

comply with applicable state regulations of each state ... whereas the [NADA guide and

the KBB] do not").

---

[7] This Court may take judicial notice of Directive No. 18 because, as a mandatory
directive to all insurance companies in Louisiana, it is "a matter of public record" and "a
governing quasi-regulation." *Gauthreaux*, 2001 WL 65573, at *2.

Accordingly, Plaintiffs' claim that State Farm violated § 1892(B)(5) for failing to use NADA or the KBB is insufficient as a matter of law.

## B.   The Autosource Reports Are Fair Market Value Surveys as Contemplated by § 1892(B)(5).

Under § 1892(B)(5)(a), when an insurance policy provides for adjusting and settling total-loss vehicle payments based on "actual cash value," an insurer may use one of several methods, including "[a] fair market value survey conducted using qualified retail automobile dealers in the local market area as resources." If there are no local dealers, then "the nearest reasonable market can be used." *Id.*

Here, Plaintiffs simply declare that Autosource is "not a 'fair market value survey'" because it "uses national data bases and algorithms relying on nationally compiled data to determine its values." (ECF No. 1, ¶ 43.) But that allegation is directly contrary to the Autosource reports that Plaintiffs themselves include in their Complaint. (*Id.* ¶¶ 18, 22.) According to the report excerpts inserted in the Complaint, "Audatex [provider of the Autosource report] has been determining *locally sensitive*, fair, and accurate market values for vehicles since 1985, with more than 30 million vehicles valued. The Autosource Market Value includes vehicles for sale at dealerships and private party sellers, *starting right in the local market*." (*Id.* (emphasis added).) The excerpts then explain how each fair market survey was conducted. For Mr. Shields, Autosource derived his vehicle's base value using a "comparable vehicle" from the local market of Lafayette, Louisiana. (*Id.* ¶ 18.) And for Ms. Bourque, Autosource derived her vehicle's value using four "comparable vehicles" from the local market—two from Zachary, Louisiana, one from Baton Rouge, and another from New Orleans. (*Id.* ¶ 22.)

The full Autosource reports confirm this. For Mr. Shields, his vehicle's value was derived from a comparable vehicle—another 2008 Isuzu i-370—offered for sale by "Motor City" in Lafayette, Louisiana. (Ex. 3, at 4.) And for Ms. Bourque, her vehicle's value was derived from four comparable vehicles—all 2016 Toyota RAV4 XLEs—offered for sale by "All Star Toyota of Baton Rouge" in Zachary, Louisiana, "Team Toyota Scion" in Baton Rouge, and "Toyota of New Orleans" in New Orleans. (Ex. 2, at 4-5.)

And if Plaintiffs' own allegations weren't enough, another court also has determined that total-loss valuation methodologies, such as Autosource, provide localized valuations. Whereas NADA and the KBB "provide only regional data that are rarely localized," total-loss valuation methodologies such as Autosource provide "valuations in local markets," *CCC Holdings Inc.*, 605 F. Supp. 2d at 42, compiled from "comprehensive databases" and "numerous sources and hundreds of localities," *id.* at 33; *see also id.* at 43 (total-loss valuation systems such as Autosource are "especially accurate," and contain "up-to-date valuations" characterized by their "speed, reliance and defensibility").

Put simply, Autosource *is* a "fair market value survey conducted using qualified retail automobile dealers in the local market." La. Stat. Ann. § 22:1892(B)(5). And Plaintiffs' only allegation that it's not—that Autosource uses "national data bases and algorithms"—is false, as the reports Plaintiffs themselves include and *CCC Holdings Inc.* indisputably show. Accordingly, Plaintiffs' claims should be dismissed because State Farm used a "fair market value survey conducted using qualified retail automobile dealers in the local market" within the meaning of § 1892(B)(5).

**C.**  **Plaintiffs' Conclusory Allegation That Autosource Is Not "a Generally Recognized Used Motor Vehicle Industry Source" Is Insufficient and Demonstrably False in Any Event.**

Because § 1892 permits an insurer to determine value "using *one* of" several methods, and because State Farm's use of Autosource indisputably complies with § 1892(B)(5)(a), the Court need not reach the issue of whether Autosource also complies with § 1892(B)(5)(b). But if it does reach that question, the answer is the same.

Under § 1892(B)(5)(b), an insurer may also determine "actual cash value" by looking to "[t]he retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database." Here, Plaintiffs conclusorily allege that Autosource is not a "generally recognized used motor vehicle industry source." (ECF No. 1, ¶ 41.) But Plaintiffs fail to allege *how* or *why* it's not, or even any facts supporting that allegation. The law is clear that, to state a claim, Plaintiffs must do more than simply recite the language of § 1892(B)(5)(b) without *any* supporting facts. *See Hibbets*, 377 F. App'x at 356 ("Simply stating a conclusory allegation that [an insurer's] actions were arbitrary, or that [the insurer] breached a duty, without providing factual allegations in support is insufficient to state a claim").

And even if sufficiently alleged, Plaintiffs' claim still fails. On their face, the reports state that Audatex has compiled a "used vehicle database" that offers "the most comprehensive market-driven valuation process available." More than 30 million vehicles have been the subject of Autosource reports. (ECF No. 1, ¶¶ 18 & 22.) The *CCC Holdings* Court ruled them to be more accurate, more current, and more reliable than NADA or KBB. Even further, the reports show that the vehicle values are derived from a "generally recognized used motor vehicle industry source"—the used motor vehicle dealers themselves. Autosource derived the value for Mr. Shields' vehicle from a

comparable vehicle at "Motor City" in Lafayette, Louisiana (Ex. 3, at 4), and it derived the value for Ms. Bourque's vehicle value from comparable vehicles at "All Star Toyota of Baton Rouge" in Zachary, Louisiana, "Team Toyota Scion" in Baton Rouge, and "Toyota of New Orleans" in New Orleans. (Ex. 4, at 4-5.) Just because Plaintiffs' counsel apparently are unfamiliar with Audatex does not mean—and it is an insufficient basis on which to plead—that Autosource is not a generally recognized used motor vehicle source.[8]

Accordingly, Plaintiffs' claim that State Farm violated § 1892(B)(5) should be dismissed as a matter of law. *See Thompson*, 337 F.3d at 501 (affirming the district court's dismissal order under Rule 12(b)(6) because "the plain terms of the ... statute" show the defendant "can have no ... liability"); *Forsyth*, 2018 WL 4909953, at *1; *Jordan*, 2017 WL 396169, at *5.

## III.   PLAINTIFFS' BREACH OF CONTRACT CLAIM ALSO FAILS AS A MATTER OF LAW.

### A.   Plaintiffs Fail Even to Identify the Specific Policy Provision That State Farm Allegedly Breached, Requiring Dismissal.

To state a claim for breach of an insurance contract under Louisiana law, "a plaintiff must allege a breach of a specific policy provision." *See Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002); *see also Hibbets*, 377 F. App'x at 355 (dismissing a breach of contract claim because the plaintiffs' complaint "made no reference to any

---

[8] Although the district court in *Slade v. Progressive Security Ins. Co.*, 6:11-2164, 2013 WL 12182957 (W.D. La. Feb. 4, 2013), found that the plaintiff there adequately stated a breach of contract claim premised on alleged violations of § 1892(B)(5), that court did not consider the argument State Farm makes here, namely, that Autosource, as illustrated by Plaintiffs' own allegations and the excerpted reports that they themselves included in the Complaint, complies with the plain language of § 1892(B)(5).

specific policy provision of their ... insurance contract that [the insurer] allegedly breached").

Here, Plaintiffs allege only "[o]n information and belief" that State Farm "was obligated to pay for the 'loss' of the Complainants' vehicles." (ECF No. 1, ¶ 30.) But they make no reference to any specific policy provision that State Farm allegedly breached. As the Fifth Circuit routinely recognizes, that failure alone is fatal to Plaintiffs' breach of contract claim. *See Hibbets*, 377 F. App'x at 355; *Rhino Shield Gulf S., LLC v. RSUI Grp., Inc.*, No. 18-11247, 2019 WL 461692, at *4, n.2 (E.D. La. Feb. 5, 2019) (dismissing the plaintiffs' breach of contract claim because "the Fifth Circuit has consistently held" that "a plaintiff must allege a breach of a specific policy provision," and plaintiffs failed to do so); *Favors v. Office of Risk Mgmt.*, No. 14-1786, 2015 WL 858534, at *2 (E.D. La. Feb. 27, 2015) (dismissing the plaintiff's breach of contract claim because the "Plaintiff fail[ed] to cite a specific policy provision breached by" the insurer).

### B. Even if This Court Deems Plaintiffs' Allegations Sufficient, State Farm Did Not Breach the Policy as a Matter of Law.

State Farm did not breach the Policy as a matter of law for two reasons. First, the Policy obligated State Farm to pay the "actual cash value" of total-loss vehicles, which is *exactly* what State Farm did here. Second, to the extent that Plaintiffs allege State Farm breached the Policy by failing to use NADA or the KBB to determine value, the Policy does not ordain a particular valuation methodology.

1.    State Farm complied with the Policy.

"Under Louisiana law, an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206. When

interpreting insurance contracts, courts seek to determine the parties' common intent, as reflected by the words in the policy, *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 (5th Cir. 2011), with those words given "their generally prevailing meaning," La. Civ. Code Ann. art. 2047.

Here, Plaintiffs claim "[t]he parties intended" for State Farm to pay the "loss," which should "be considered the fair market retail value of the vehicle." (ECF No. 1, ¶ 31.) Plaintiffs then allege that State Farm "paid only a portion" of that fair market retail value, and its "refusal to pay the full amount" is a breach of contract. (*Id.* ¶¶ 33-34.) As to how State Farm "refused" to pay the full amount, Plaintiffs allege that Autosource "intentionally undervalues" it. (*Id.* ¶ 35.)

But the Policy doesn't obligate State Farm to pay the "fair market retail value" of Plaintiffs' vehicles. It only obligates State Farm to pay the "actual cash value" of their vehicles. Specifically, the Policy states that if a "covered vehicle" sustains direct, sudden, or accidental damage, State Farm will "[p]ay the ***actual cash value*** of the covered vehicle minus any applicable deductible." (Ex. 1, at 27 (emphasis added).) The Policy does not define "actual cash value" as the "fair market retail value," and neither does Louisiana law. *See Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 520 (5th Cir. 2010) ("Actual cash value is not necessarily synonymous with market value at the time of the loss").

For that reason alone, State Farm could not have breached the Policy by failing to pay the "fair market retail value" of the vehicles, as the Policy does not obligate State Farm to do so. *See Slade*, 2013 WL 12182957, at *5 (because the insurance policy obligated the insurer to pay the "actual cash value" of a covered vehicle, not its "fair market retail value," the insurer did not breach the contract as a matter of law); *Blakely*

17

*v. State Farm Mut. Auto. Ins. Co.*, 406 F.3d 747, 752-53 (5th Cir. 2005) (affirming dismissal of a putative class action because the insurer complied with the plain language of policy).

And even construing Plaintiffs' allegations generously so that "actual cash value" and "fair market retail value" are treated synonymously, the Autosource report by its terms provided the "market value" of the total-loss vehicles. As excerpted in the Complaint, each Autosource report provides a "market value" that was "prepared specifically for [the] vehicle," with (i) a "vehicle base" valuation derived from "vehicles for sale at dealerships and private party sellers, starting right in the local market"; (ii) upward and downward adjustments for that *particular car*'s mileage and options; and (iii) upward and downward adjustments for that *particular car*'s condition, including the condition of its seats, carpets, interior trim, glass, headliner, and exterior trim. (ECF No. 1, ¶¶ 18, 22; *see also* Ex. 2, at 1-2; Ex. 3, at 1-2.)

Because State Farm used a valuation methodology that paid Plaintiffs the "market value" of their totaled vehicles, the allegations of the Complaint that State Farm breached the Policy by failing to pay "fair market retail value" are insufficient as a matter of law. *See Slade*, 2013 WL 12182957, at *5; *see also Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 676 (5th Cir. 2007) (affirming the district court's order dismissing the plaintiffs' breach of contract claim because the insurer complied with the plain language of the insurance policy); *Blakely*, 406 F.3d at 752-53.

        2.     <u>Plaintiffs' allegations that State Farm breached the Policy by failing to use NADA or the KBB are insufficient and implausible</u>.

Plaintiffs also appear to allege that State Farm breached the Policy by failing to use "other valuation systems such as NADA book values or Kelly (sic) Blue Book values,"

which Plaintiffs contend "are the generally accepted valuation tools." (ECF No. 1, ¶ 29; *see also id.* ¶¶ 21, 25.) But the Policy does not require State Farm to use NADA, the KBB, or any other specific valuation methodology to determine actual cash value. *See Gauthreaux*, 2001 WL 65573, at *4; (*see also* Ex. 4). Accordingly, the Court should dismiss Plaintiffs' breach of contract claim to the extent they allege that State Farm must use NADA or the KBB to determine "actual cash value" under the Policy.

## IV.   PLAINTIFFS DO NOT STATE A STAND-ALONE CLAIM FOR A VIOLATION OF LA. R.S. 22:1973.

Finally, Plaintiffs allege that State Farm violated its statutory duty of good faith and fair dealing, *see* La. R.S. 22:1973(A), and that State Farm failed to make timely payments within 60 days, *id.* § 22:1973(B)(5). (ECF No. 1, ¶¶ 44-46.) This claim fails for two reasons: (1) without a predicate breach of contract claim, Plaintiffs cannot state a claim for penalties under § 1973; and (2) by Plaintiffs' own allegations, State Farm complied with § 1973 because it did make timely payments to Plaintiffs.

### A.   Plaintiffs Do Not State Claims for a Violation of § 1973 Without a Predicate Breach of Contract Claim.

Louisiana law is clear that "[t]he penalties authorized by [§ 1973] 'do not stand alone'"—they "depend upon a 'valid underlying claim.'" *Edwards v. Allstate Prop. & Cas. Co.*, No. Civ. A. 04-2434, 2005 WL 221558, at *3 (E.D. La. Jan. 27, 2005) (citing *Phillips v. Patterson Ins. Co.*, 813 So. 2d 1191, 1195 (La. Ct. App. 2002)). This means that, if a plaintiff's underlying breach of contract claim fails, then the plaintiff's claim under § 1973 must fail as well. *See Hibbets*, 377 F. App'x at 355 (affirming dismissal of putative class action plaintiffs' claims under § 1973 because the plaintiffs' underlying breach of contract claim failed); *Sonnier*, 509 F.3d at 677 ("Since we find that [the insurer] did not breach its contractual obligations, we necessarily find that [the insurer]

is not liable for bad faith breach of contract [under the predecessor to § 1973]"); *see also Arceneaux v. State Farm Fire & Cas. Co.*, Nos. 06-3855, 07-3830, 2009 WL 959948, at *3 (E.D. La. Apr. 7, 2009) ("The duty of good faith [under § 1973] is intimately related to [an insurer's] contractual obligations, as the statute essentially poses a duty on the insurer to perform its contractual obligations in good faith. In the absence of a contractual duty, the duty of good faith simply does not exist").

Accordingly, because Plaintiffs have no viable breach of contract claim against State Farm, the Court should likewise dismiss their statutory claim under § 1973.

### B.    Plaintiffs Fail to State a Claim Under § 1973 Because State Farm Made Timely Payments to Plaintiffs.

Even if Plaintiffs' claim under § 1973 could survive dismissal without a viable contract claim, it still fails as a matter of law because Plaintiffs' allegations show that State Farm *did* make timely payments, precluding penalties under § 1973.

Section 1973 imposes penalties against insurers that arbitrarily, capriciously, or without probable cause fail to make timely payments to their insureds. La. R.S. 22:1973(A), (B)(5). Here, Plaintiffs "specifically allege" that State Farm violated § 1973(B)(5) because "more than 60 days have passed" since Plaintiffs "submitted satisfactory proof of loss" to State Farm, but State Farm has "not paid the *full amount* due under the terms of the insurance contract." (ECF No. 1, ¶ 46 (emphasis added).) Implicit in this allegation is a concession fatal to Plaintiffs' claim—they allege only that State Farm failed to pay the "full amount" due. They do not, and cannot, allege that State Farm failed to pay what it determined was the "actual cash value" of their vehicles within 60 days. As such, recovery under § 1973 is unavailable because the statute does not impose penalties on insurers that promptly pay the undisputed amount of a claim.

*See Seacor Holdings*, 635 F.3d at 685 (finding that penalties under § 1973 were not appropriate where insurer promptly paid the undisputed amount); *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 299 (5th Cir. 2009) (reasoning that insurers are permitted to dispute claims in good faith, and "[a] refusal to pay the full amount claimed will not be arbitrary and capricious when the dispute has a good faith basis"); *Riser v. Shelter Mut. Ins. Co.*, 997 So. 2d 675, 679-80 (La. Ct. App. 2008) (reversing an award of penalties and attorney fees where the insurer paid "$5,481.50 for [a] twelve-year-old vehicle with 154,148 miles," and the disputed value totaled approximately $3,000).

Accordingly, the Court should dismiss Plaintiffs' claim under § 1973.

## CONCLUSION

The Court should grant Defendant's Motion to Dismiss and dismiss Plaintiffs' Complaint in its entirety with prejudice.

Dated: December 17, 2019

Respectfully submitted,

*s/ Heather S. Lonian*

Wayne J. Lee
Heather S. Lonian
STONE PIGMAN WALTHER
WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, LA 70112-4042
Phone:   504.593.0814
Email:   wlee@stonepigman.com
         hlonian@stonepigman.com

Peter W. Herzog III (*pro hac vice pending*)
WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, MO 63102
Phone:   314.326.4129
Email:   pherzog@wtotrial.com

*Attorneys for Defendant State Farm*
*Mutual Automobile Insurance Co.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing with the Court using the CM/ECF

system, which will send notification of the filing to all CM/ECF participants.

Dated: December 17, 2019                     *s/ Heather S. Lonian*
                                              Heather S. Lonian