UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **DARREN MICHAEL SHIELDS ET AL.** | **CASE NO. 6:19-CV-01359** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

### MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 61] filed by defendant State Farm Mutual Automobile Insurance Company. Plaintiffs oppose the motion. Doc. 63. The matter is now fully briefed and the court issues this ruling.

### I.
#### BACKGROUND

This lawsuit is one of several pending in United States district courts, challenging the valuation systems used by car insurers to determine cash value of vehicles on total loss claims. Plaintiffs in this matter, Darren Shields and Connie Bourque, are two Louisiana residents who had insurance policies through State Farm. Under the terms of these policies, State Farm agreed to pay the owner the actual cash value ("ACV") of the insured vehicle upon the occurrence of a total loss. To determine the ACV, State Farm used a valuation product known as the Autosource Market-Driven Valuation ("Autosource"), which was developed by a company known as Audatex and allegedly marketed exclusively to insurance companies. Doc. 1, ¶¶ 7–13.

Plaintiff Shields filed a claim under his collision coverage, after his 2008 Isuzu i-370 LS truck was involved in an accident that occurred on or about April 27, 2019. *Id.* at ¶¶ 7–8, 18. Plaintiff Bourque also filed a claim under her collision coverage, based on damage sustained to her 2016 Toyota Rav4 XLE in an accident occurring on or about March 7, 2018. *Id.* at ¶¶ 9–10, 21. Both plaintiffs challenge the adjusted value of their vehicles, as determined by the Autosource valuation report, and allege that it resulted in their claims being undervalued. They filed suit in this court on October 16, 2019, invoking the court's jurisdiction under 28 U.S.C. § 1332 and alleging that State Farm's use of Autosource resulted in a breach of the insurance contract as well as violations of Louisiana law. *Id.* at ¶¶ 27–48. They seek certification on behalf of State Farm policyholders who have been similarly undercompensated based on the use of Autosource. *Id.* at ¶¶ 50–59.

State Farm now brings this Motion for Summary Judgment, asserting that (1) both plaintiffs accepted State Farm's ACV determination and thereby formally compromised their claims and (2) plaintiff Shields is judicially estopped from bringing his claim, because he failed to disclose the suit in his Chapter 13 bankruptcy proceedings. Doc. 61, att. 1. Plaintiffs oppose the motion, arguing that writings on which State Farm relies as evidence of the compromise do not show any such agreement. Doc. 63. They also maintain that judicial estoppel should not be applied to Shields's claim because his failure to disclose was inadvertent and subsequently remedied. *Id.*

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

### A. *Compromise of Claims*

#### 1. *Background*

Plaintiff Shields filed a claim with State Farm after his covered vehicle, a 2008 Isuzu truck, was damaged in an accident that occurred on or about April 27, 2019. Doc. 61, att. 7, p. 6. State Farm declared the vehicle a total loss. *Id.* On May 1, 2019, State Farm sent Shields a letter assigning the vehicle an ACV of $6,997.00, with a net amount of $7,167.75 (ACV plus taxes and fees, minus deductible) payable to the lienholder and $0 payable to Shields. Doc. 61, att. 11, p. 2. In the letter State Farm also described the process through which it determined the vehicle's ACV and invited Shields to contact the agency if he had additional information for it to consider or believed it had incorrectly determined the ACV. *Id.* The letter concluded with, "Enclosed is a checklist of documents and/or items you will need to return to us. Instructions and samples are included for your reference." *Id.* These documents included a "Special and Limited Power of Attorney" ("SLPA") which allowed State Farm to secure legal title to the vehicle. *Id.* at 2, 6. The letter (in the list of enclosures) and checklist described the SLPA as a "settlement document," though no such description is contained on the SLPA itself or in the body of the letter. *Id.* at 3, 7. Shields agreed to the ACV determination after a telephone conversation and signed the SLPA on May 6, 2019. Doc. 61, att. 7, pp. 6–7; doc. 61, att. 15. State Farm then paid the net amount to the lienholder eight days later. Doc. 61, att. 12.

Plaintiff Bourque's claim proceeded in nearly identical fashion. She filed a claim with State Farm after her covered vehicle, a 2016 Toyota RAV-4, was damaged in an accident that occurred on or about March 7, 2018. Doc. 61, att. 24, pp. 5–6. State Farm declared the vehicle a total loss and sent a letter on March 13, 2018, assigning the vehicle an ACV of $19,928.00, with a net amount of $21,096.94 payable to the lienholder and $0 payable to Bourque, with identical language to Shields's letter regarding determination of the ACV and the enclosed documents. Doc. 61, att. 28. State Farm's records show that the ACV determination was conveyed to Bourque over the phone on the same date and that she accepted. Doc 61, att. 27. Bourque recalled having a "lengthy" conversation with a State Farm representative on this subject and regarding the ACV as low, but she did not recall either accepting or objecting to the determination. *Id.* at 7–8. She signed the SLPA on March 15, 2018, and State Farm released the funds to the lienholder. Doc. 61, atts. 31 & 32. State Farm moves for summary judgment on both plaintiffs' claims based on these exchanges, arguing that they show a compromise of the matter under Louisiana law.

### 2. *Relevant Law*

Under Louisiana law, a compromise is "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071. Louisiana courts have long recognized a "strong policy favoring compromise agreements and finality of settlements." *See Brown v. Drillers, Inc.*, 630 So.2d 741, 757 (La. 1994) (citing *Rivett v. State Farm Fire and Cas. Co.*, 508 So.2d 1356 (La. 1987)). Compromises have *res judicata* effect,

precluding either party from bringing a subsequent action based on that matter. La. Civ. Code art. 3080.

As a contract, a compromise must be interpreted according to the common intent of the parties. *Maggio v. Parker*, 250 So.3d 874, 878–79 (La. 2018); *see* La. Civ. Code art. 2045. A compromise is only enforceable if it is reduced to a writing signed by both parties or recited in open court, and "settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." La. Civ. Code arts. 3072, 3076; *see Felder v. Ga. Pac. Corp.*, 405 So.2d 521, 523 (La. 1981). The compromise need not be contained in a single instrument, however. Instead, "[it] would suffice that there be a written offer signed by the offerer and a written acceptance signed by the acceptor, even if the offer and the acceptance are contained in separate writings." *Felder*, 405 So.2d at 523–24.

### 3. Application

State Farm contends that the letters assigning the vehicle ACV, together with the executed SLPAs, form the signed offer and acceptance satisfying the writing requirements for a compromise under Louisiana law. Plaintiffs, however, maintain that (1) State Farm's communication of the ACV was not an offer of compromise but an unconditional *McDill* tender and (2) the SLPAs were mere title transfer tools and not intended to communicate any sort of settlement or release.

On the first issue, the Louisiana Supreme Court holds that, "[w]hile an insurer need not tender payment for amounts that are reasonably in dispute . . . there can be no good reason . . . for withholding an undisputed amount." *La. Bag Co., Inc. v. Audubon Indem.*

6

*Co.*, 999 So.2d 1104, 1114 (La. 2008) (cleaned up). "Where there is a substantial, reasonable and legitimate dispute as to the extent or amount of the loss, the insurer can avoid the imposition of penalties *only* by unconditionally tendering the undisputed portion of the claim." *Id.* (citing *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1091 (La. 1985) (emphasis in original). This is known as a *McDill* tender.

Plaintiffs contend that the letters amounted only to *McDill* tenders because State Farm merely "tendered the amount spit out by Autosource" and also invited plaintiffs to submit any additional information or notify State Farm if they believe the agency had incorrectly calculated the ACV. Doc. 63, p. 8. Accordingly, they maintain, there were no "strings attached" to the letter and it did not amount to an offer to be accepted. *Id.* As State Farm points out, however, plaintiffs have submitted no evidence that the claim was disputed at the time the letters were sent—a prerequisite for a *McDill* tender. *See La. Bag Co., Inc.*, at 1115–16. Although Bourque testified that she voiced dissatisfaction with the ACV determination after she learned of it in a phone call on the same date, there is no indication or even allegation that either party made its dispute known to State Farm beforehand. Additionally, the fact that State Farm invited both plaintiffs to notify it of any dispute or submit additional evidence does not render the offer unconditional or the claim disputed at the time the offer was made. Meanwhile, the fact that State Farm referred to the enclosures as "Settlement Documents" buttresses the agency's position that the ACV was intended as an offer of compromise. Whether it clearly communicated such terms, however, is bound up with the question of whether the letter and SLPAs, taken together,

7

can be understood as writings reflecting the parties' mutual consent to the alleged compromise.

As for the SLPAs, there is no language on the document indicating a release or compromise of any claim. The only appearance of such language comes instead from the description of the SLPA and checklist as "settlement documents" at the end of State Farm's letter, in the list of enclosures. Plaintiffs maintain that the plain language of the document and their uncontested testimony show that the SLPA was a mere instrument for the title transfer process rather than an acceptance of the letter's compromise offer. State Farm asserts, however, that it conditioned acceptance of its compromise offer on plaintiffs' release of title and that the signatures on the SLPAs therefore represent plaintiffs' acceptance by conduct clearly indicative of consent. *See* La. Civ. Code art. 1927.

"[T]he meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument." *Brown v. Drillers, Inc.*, 630 So.2d 741, 748 (La. 1994). When interpreting a compromise agreement, however, the court will admit "substantiating" extrinsic evidence for the limited purpose of "establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim." *Maggio v. Parker*, 250 So.3d 874, 879 (La. 2018) (citing *Brown*, 630 So.2d at 749).

Here, in both instances, the four corners of the combined instruments are insufficient to show that execution of the SLPA should be understood as acceptance of the ACV determination and release of claims against State Farm. Neither the letter nor the SLPA speaks in such terms, and the letter does not condition payment of the ACV (or the plaintiff's ability to contest same) on whether or not he executes the SLPA.[1] While either plaintiff might have gained a greater understanding of State Farm's intent through their phone calls, the deposition testimony shows at most that both plaintiffs understood that they could contest the ACV determination with State Farm but decided not to—not that they understood that they would forfeit their right to do so by executing the SLPA. Accordingly, there is insufficient evidence of the parties' mutual consent to compromise and summary judgment must be denied on this issue.

### B. *Judicial Estoppel*

#### 1. *Background*

Three months before the accident giving rise to his claim against State Farm, Shields filed a Chapter 13 petition for bankruptcy in the United States Bankruptcy Court for the Western District of Louisiana. Doc. 61, att. 16. Shields did not disclose any potential legal claims in his petition or his Chapter 13 plan, though the plan provided space for such a disclosure. *Id.*; doc. 61, att. 17. Shields likewise did not disclose the claim in his first or second amended plans, which were filed on May 14 and September 18, 2019, and subsequently confirmed by the court. Doc. 61, atts. 18, 19, 22. In August he sought

---

[1] Meanwhile, as plaintiffs note, State Farm is a sophisticated entity and might have clearly drafted either an offer communicating these terms or a formal release to be executed by plaintiffs.

approval from the bankruptcy court to hire attorneys to represent him in a personal injury suit arising from the April 2019 accident, but he made no such request related to hiring counsel for this suit. Doc. 61, atts. 20 & 21.

This suit was filed in October 2019. Doc. 1. Shields did not disclose it to the bankruptcy court until he filed an amended schedule and application to retain counsel in this matter on March 29 and 30, 2021, after State Farm filed the instant motion for summary judgment. *See In Re Darren Michael Shields*, No. 4:19-bk-50126, docs. 44–46 (W.D. La. Bankr.). In his deposition in November 2020, however, Shields stated that he had discussed the suit with his attorney in the bankruptcy proceedings and only been told that he would have to turn any proceeds from the suit into the bankruptcy court. Doc. 63, att. 2, pp. 6–7. He also stated that he had left it up to his attorney to seek the bankruptcy court's approval of hiring counsel for this suit. *Id.*

### 2. Relevant Law

A Chapter 13 bankruptcy petitioner must disclose all pending and unliquidated claims during his bankruptcy proceedings. *See Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005). This obligation is ongoing, meaning that the debtor is required to amend his schedule and disclose any post-petition claims that arise. *Id.* "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *Youngblood Grp. v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996) (cleaned up). When a debtor fails to fulfill this obligation, he risks forfeiting his undisclosed claim

under the doctrine of judicial estoppel. *In re Flugence*, 738 F.3d 126, 128–29 (5th Cir. 2013).

"Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (internal quotation omitted). The doctrine was designed with the goals of "preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* It may be applied, at the court's discretion, when the following three elements are met: 1) The party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently. *Flugence*, 738 F.3d at 128–29.

### 3. Application

Shields admits that he did not disclose this suit to the bankruptcy court until after the motion for summary judgment was filed, but maintains that judicial estoppel is inappropriate because his nondisclosure was inadvertent and subsequently remedied. The rules of judicial estoppel, however, require a debtor to disclose his claim before filing suit. *Henry v. Kansas City. So. Ry. Co.*, 2010 WL 3613795, at *4 (W.D. La. Sep. 8, 2010). "Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them." *United States ex rel. Long v. GSMIdea City, LLC*, 798 F.3d 265, 273 n. 6 (5th Cir. 2015) (quoting

11

*In re Superior Crewboats, Inc.*, 374 F.3d 330, 336 (5th Cir. 2004)). The fact that Shields subsequently disclosed his claim cannot extinguish the omission as a basis for dismissal.

Additionally, inadvertence requires the plaintiff to show lack of knowledge or that he had no motive for concealing the suit from the bankruptcy court. *Allen v. C&H Distribs., LLC*, 813 F.3d 566, 573 (5th Cir. 2015). Shields argues that he had no motive, because he knew he would still have to turn over his recovery to the bankruptcy court, and that the failure to disclose was unintentional. However, it was Shields's disclosure of his claim that made it available to his creditors. The Fifth Circuit holds that in such circumstances, the motive is "self-evident." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012). Shields's testimony that his attorney had also advised him that he would have to surrender his recovery is insufficient to create an issue of fact, and instead provides further support for the idea that he had a motive to conceal the suit. As for lack of knowledge, that element rests not on the plaintiff's unawareness of his duty to disclose but instead on his unawareness of the facts giving rise to the duty. *Id.* at 130. "In other words, the controlling inquiry . . . is the knowing of facts giving rise to inconsistent positions. A lack of awareness of a statutory disclosure duty for legal claims is not relevant." *Id.* at 130–31 (cleaned up). Shields was plainly aware of his claim at the time he hired counsel and filed suit, yet did not disclose the matter to the bankruptcy court until compelled to do so by State Farm's motion for summary judgment.

It is unfortunate for Shields to lose his claim because of his reliance on erroneous advice from counsel or counsel's failure to fulfill some duty, as he indicated in his deposition testimony. But the Fifth Circuit has clearly rejected that scenario as grounds for

establishing inadvertence. *See Flugence*, 738 F.3d at 130 ("[Plaintiff's] representation that she did not know she had to disclose—and that she relied on the advice of her attorney—is unavailing . . . .") State Farm has shown that all of the elements of judicial estoppel are met. The remedy plays an important role on preserving the integrity of the bankruptcy system, which "depends on full and honest disclosure by debtors of all of their assets." *Coastal Plains, Inc.*, 179 F.3d at 208 (quoting *Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y. 1996)). The court may still apply this equitable doctrine "flexibly to achieve substantial justice," *Reed v. City of Arlington*, 650 F.3d 571, 576 (5th Cir. 2011). But the undersigned finds no basis for rejecting estoppel in this matter, given the clear satisfaction of all three prongs and the plaintiff's failure to show any circumstance not already rejected by controlling precedent as irrelevant.[2] The fact that Shields made the required disclosure for his personal injury suit, though not for this one, also points to potentially greater culpability on his part and makes the court all the more reluctant to grant him leniency. Accordingly, the motion for summary judgment will be granted on the grounds of estoppel.

---

[2] While Shields protests that State Farm will receive a windfall if his claim is dismissed, the doctrine was put into place to protect the court's integrity and any small windfall to State Farm from the loss of Shields's claim, when Bourque's remains pending in the same action, does not outweigh that interest.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 61] will be granted in part and denied in part, with the claims of plaintiff Darren Shields **DISMISSED WITH PREJUDICE** on the grounds of judicial estoppel.

**THUS DONE** in Chambers on this 11th day of May, 2021.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**