UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **DARREN MICHAEL SHIELDS ET AL** | **CASE NO. 6:19-CV-01359** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE CO** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

### MEMORANDUM ORDER

Before the court is a Motion to Exclude the Report and Testimony of Nicole N. Zakowicz [doc. 69], filed by defendant State Farm Mutual Automobile Insurance Company. Plaintiff opposes the motion. Doc. 96. The matter came before the court for hearing on September 28, 2021, and the undersigned now issues this ruling.

I.
BACKGROUND

This lawsuit challenges a valuation system used by car insurers to determine cash value of vehicles on total loss claims. Plaintiffs Darren Shields and Connie Bourque are two Louisiana residents who had insurance policies through State Farm. Under the terms of these policies, State Farm agreed to pay the owner the actual cash value ("ACV") of the insured vehicles upon the occurrence of a total loss. To determine the ACV, State Farm used a valuation product known as the Autosource Market-Driven Valuation ("Autosource"), which was developed by a company known as Audatex and allegedly marketed exclusively to insurance companies. Doc. 1, ¶¶ 7–13.

Plaintiff Shields filed a claim under his collision coverage, after his 2008 Isuzu i-370 LS truck was involved in an accident that occurred on or about April 27, 2019. *Id.* at ¶¶ 7–8, 18. Plaintiff Bourque also filed a claim under her collision coverage, based on damage sustained to her 2016 Toyota Rav4 XLE in an accident occurring on or about March 7, 2018. *Id.* at ¶¶ 9–10, 21. Both plaintiffs challenge the adjusted value of their vehicles, as determined by the Autosource valuation report, and allege that it resulted in their claims being undervalued. They filed suit in this court on October 16, 2019, invoking the court's jurisdiction under 28 U.S.C. § 1332 and alleging that State Farm's use of Autosource resulted in a breach of the insurance contract as well as violations of Louisiana law. *Id.* at ¶¶ 27–48. They seek certification on behalf of State Farm policyholders who have been similarly undercompensated based on the use of Autosource. *Id.* at ¶¶ 50–59.

On a prior motion for summary judgment, the court dismissed plaintiff Shields's claims on the grounds of judicial estoppel as a result of his failure to disclose this suit in his bankruptcy proceedings. Doc. 67. The parties are now before the court on motions pending prior to their class certification hearing. State Farm moves to exclude the report and testimony of plaintiffs' expert Nicole N. Zakowicz, who has offered an opinion on the methodology for calculating damages class-wide. Doc. 69. Plaintiff Bourque opposes the motion. Doc. 96.

## II.
## LAW & APPLICATION

### A. Daubert Standards

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based.[1] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24,

---

[1] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

The *Daubert* standard for admissibility of expert evidence applies at the class certification stage when scientific evidence is relevant to the decision to certify. *Prantil v. Arkema, Inc.*, 986 F.3d 570, 575 (5th Cir. 2021). Class certification depends in part on the ability to calculate damages class-wide. *See, e.g., Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 F. App'x 296, 297 (5th Cir. 2004) ("The necessity of calculating damages on an individual basis, by itself, can be grounds for not certifying a class.") *Daubert* thus governs the admissibility of Zakowicz's report and testimony.

Some courts have endorsed a limited *Daubert* analysis at the class certification stage, reasoning that the standard is relaxed because the judge acts as decisionmaker and the Rule 23 analysis does not require a trial on the merits. *See, e.g.*, *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 612 (8th Cir. 2011); *Schafer v. State Farm Fire & Cas. Co.*, 2009 WL 799978 (E.D. La. 2009) (collecting cases). As the Middle District recently emphasized, however, the district court must engage in "rigorous analysis" when reviewing a request for class certification. *Carroll v. SGS Automotive Servs., Inc.*, 2020 WL 7024477, at *3 (M.D. La. Nov. 3, 2020) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34–35 (2013)). Additionally, other circuit courts have endorsed the notion that "the district court must perform a full *Daubert* analysis" when the challenge is raised in

Rule 23 proceedings.[2] *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010). The court therefore requires full compliance with Rule 702 and *Daubert* for an expert to survive these challenges.

### B. Application

Ms. Zakowicz opines that damages in this matter can be calculated in the same manner proposed in *Slade v. Progressive Security Insurance Company*, 856 F.3d 408 (5th Cir. 2017), a putative class action challenging Progressive's use of a vehicle loss valuation product called the Mitchell Work Center Total Loss system. The Fifth Circuit noted that plaintiffs arguing a class-wide theory of liability must also "put forward a damages methodology that maps onto [their] liability theory." *Id.* at 810–11 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S.Ct. 1426, 1433 (2013)). It then affirmed the district court's finding that this methodology did not serve as a bar to certification, stating:

> Here, Plaintiffs' liability theory is that Defendant unlawfully used WorkCenter Total Loss (WCTL) to calculate the base value of total loss vehicles. Plaintiffs claim that using WCTL, instead of lawful sources such as the National Automobile Dealers Association (NADA) Guidebook or the Kelly Blue Book (KBB), resulted in their vehicles being assigned a lower base value and accordingly resulted in Plaintiffs receiving lower payouts on their insurance claims.
> Plaintiffs' damages theory aligns with that liability theory. Plaintiffs contend that damages can be calculated by replacing Defendant's allegedly unlawful WCTL base value with a lawful base value, derived from either NADA or KBB, and then adjusting that new base value using Defendant's current system for condition adjustment. Plaintiffs contend that such a calculation can be done on a class-wide basis because Defendant already possesses NADA scores for most of the class, NADA or KBB scores are

---

[2] *See also In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015) ("We join certain of our sister courts to hold that a plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless the plaintiff also demonstrates, and the trial court finds, that the expert testimony satisfies the standard set out in *Daubert*."); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (district court "correctly applied the evidentiary standard set forth in *Daubert*" at the class-certification stage).

> otherwise publicly available, and Defendant already has condition scores for each vehicle. In fact, Plaintiffs' damages expert opined that she could apply Defendant's condition adjustment to Defendant's NADA scores or publicly available NADA or KBB data. This damages methodology fits with Plaintiffs' liability scheme because it isolates the effect of the allegedly unlawful base value. That is, by essentially rerunning Defendant's calculation of actual cash value but with a lawful base value, Plaintiffs' damages theory only pays damages resulting from the allegedly unlawful base value.
> 
> And Plaintiffs' damages methodology is sound. Defendant calculates the base value and the condition adjustment separately. Under either the WCTL system or a NADA or KBB system, base value purports to measure the retail cost of a vehicle of the same make, model, and year of the loss vehicle. From this base value, an adjustment can be made to consider the condition of the loss vehicle. Because this condition adjustment is a separate and unrelated step from the calculation of base value, there is no principled reason why Defendant's own condition adjustment scores could not be used to adjust base values derived from NADA or KBB. Indeed, Plaintiffs' damages expert testified that it would not be difficult to apply Defendant's condition adjustment to NADA base values.

*Id.* at 411.

Ms. Zakowicz includes the same excerpt in her report and opines "that damages can be calculated in the same way as in *Slade* since the same data are present here." Doc. 69, att. 3, p. 14. State Farm disputes this opinion on the basis that the Autosource valuation system differs from the one used in *Slade*. It argues that (1) Ms. Zakowicz has employed no independently verifiable methodology, and (2) she based her opinion on faulty assumptions of plaintiff's counsel regarding the similarities between the cases and the commonality of injuries across the proposed class. Doc. 69, att. 1. In particular, the defense emphasizes its own expert's conclusion that over fifty percent of potential plaintiffs would have received a lower ACV determination if a NADA value had been used rather than Autosource. *See* doc. 78 (sealed exhibit). Accordingly, it maintains, her opinion fails to conform to *Daubert*'s standards and her report and testimony must be excluded.

Judge Doughty noted in *Prudhomme v. Geico Insurance Company*, another challenge to an insurer's use of a vehicle valuation program, that differences in the programs and their applications can result in an "apples versus oranges" comparison when experts attempt to apply the same damages models. No. 6:15-cv-0098, doc. 275 (W.D. La. Dec. 22, 2020) (filed under seal), *redacted version filed into the record in this matter at* doc. 69, att. 7. However, he rejected Geico's *Daubert* challenge to the plaintiff's expert who offered this comparison. Doc. 69, att. 7, pp. 10–13. Specifically, he concluded after a hearing that Geico did not challenge the expert's qualifications and that she had adequately explained the methodology she used for valuating losses. *Id.* The court has reviewed Ms. Zakowicz's report and testimony, and is satisfied that her adoption of the framework from *Slade* satisfies *Daubert*. Ms. Zakowicz's ability to defend any assumptions made in the process or to adapt the framework to different parameters goes to the weight her testimony should be afforded. Accordingly, there is no basis for excluding her report or testimony.

### III.
#### CONCLUSION

For the reasons stated above, the Motion [doc. 69] will be **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 29th day of September, 2021.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**